Frank L. HALSEMA, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–0207–CR–545.

Court of Appeals of Indiana.

Feb. 27, 2003.

Phillip R. Smith, Helmerick & Smith Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Frank Halsema ("Halsema") was convicted of Class A felony possession of methamphetamine,[1] Class A misdemeanor possession of marijuana,[2] Class A misdemeanor reckless possession of paraphernalia,[3] and Class A misdemeanor false informing[4] in Tippecanoe Circuit Court. He also admitted to being an habitual substance offender.[5] The trial court sentenced Halsema to forty years for Class A felony possession of methamphetamine, and one year on each of the three Class A misdemeanor convictions, to be served concurrently. The trial court also enhanced Halsema's sentence by five years for the habitual substance offender determination, for a total sentence of forty-five years. The trial court then suspended six months of that sentence. Halsema appeals and raises the following issues:

I. Whether there was sufficient evidence to support Halsema's convictions for possession of marijuana and reckless possession of paraphernalia;

II. Whether there was sufficient evidence that Halsema possessed at least three grams of methamphetamine within one thousand feet of a school; and,

III. Whether the jury's verdicts finding Halsema guilty of possession of methamphetamine, possession of marijuana, and reckless possession of paraphernalia are inconsistent.

Finding that there was sufficient evidence to support Halsema's convictions and that the verdicts were not inconsistent, we affirm.

### Facts and Procedural History

On September 15, 2001, at approximately 11:15 p.m., Kevin Flynn, a patrol officer with the West Lafayette Police Department ("Officer Flynn"), observed a vehicle with a defective exhaust traveling west on U.S. Highway 52, and noted that the passenger in the vehicle was not wearing a seatbelt. As Officer Flynn followed the vehicle, he saw it swerve across the center line twice, and therefore, he initiated a traffic stop.

When Officer Flynn activated his emergency lights to stop the vehicle, he observed the two men in the vehicle bending down and making furtive gestures. Before Officer Flynn approached the vehicle, two other officers with the West Lafayette Police Department, Officers Rogers and Harris, arrived on the scene. Officer Flynn then approached the driver's side of the vehicle, and Officer Rogers approached the

---

1. Ind.Code § 35–48–4–6 (1998 & Supp.2002).

2. Ind.Code § 35–48–4–11 (1998).

3. Ind.Code § 35–48–4–8.3 (1998).

4. Ind.Code § 35–44–2–2 (1998 & Supp.2002).

5. Ind.Code § 35–50–2–10 (1998 & Supp. 2002).

passenger's side. As Officer Flynn looked inside the vehicle, he immediately saw a case of beer in the backseat of the vehicle. He also noticed an open can of beer on the passenger side floorboard. Officer Flynn then asked the driver, Ritchie Halsema ("Ritchie"), for his driver's license. Ritchie informed Officer Flynn that his license had been suspended, and Ritchie was therefore placed under arrest. Tr. pp. 29, 32. When the officers asked the passenger to identify himself, the passenger indicated that his name was Lonnie Halsema; however, the passenger was later identified as Frank Halsema.

As Officer Harris was giving Halsema a citation for not wearing his seatbelt, he saw a clear plastic bag containing a green leafy substance, which he suspected was marijuana, on the passenger side floorboard of the vehicle. Therefore, Halsema was also placed under arrest. The officers then searched the vehicle and found several individually wrapped bags of methamphetamine located throughout the vehicle, and a hollowed out ballpoint pen on the end of which there was a tan colored residue located on the passenger side floorboard. The total amount of methamphetamine found in the vehicle was 112 grams. In the trunk of the vehicle, the officers also found scales, Aderal pills, and drug paraphernalia pipes.

The vehicle was registered to Juliet Whiteley ("Whiteley"), Halsema's ex-girlfriend, and the address listed on the registration was 1216 Shenandoah Drive, Lafayette, Indiana. Both Ritchie and Halsema told Officer Harris that they resided at that address. Tr. p. 129. That residence is also located within 1000 feet of a school.

Officers Flynn, Rogers, Harris, and an additional officer, Lieutenant Dunscomb, then proceeded to 1216 Shenandoah Drive. Upon arriving at that address, they spoke to Whiteley, who agreed to speak with the officers and gave the officers consent to search the residence. Roger Ferguson ("Ferguson") and Whiteley's child were also at the residence at that time. During the search of the house, methamphetamine was found on Whiteley's person and in a cigarette package dropped by Ferguson. Methamphetamine was also found in a dresser drawer in the bedroom where Ritchie had been staying. Additionally, plastic bags, twist ties, tinfoil, and a digital scale were found in the dresser drawer.

On September 18, 2001, Halsema was charged with dealing in methamphetamine, as a Class A felony, possession of methamphetamine, as a Class A felony, maintaining a common nuisance, as a Class D felony, possession of marijuana, as a Class A misdemeanor, reckless possession of paraphernalia, as a Class A misdemeanor, and false informing, as a Class A misdemeanor. On September 27, 2001, Halsema was also charged with conspiracy to commit dealing in methamphetamine, as a Class A felony, and with being an habitual substance offender.

A jury trial was held on May 28 and 29, 2002. At trial, Whiteley testified that on September 14, 2001, Halsema had stated that there was "some Mexican sellin' four gram eight balls for a hundred and forty-six dollars," and during that night, Whiteley saw Halsema with methamphetamine in his possession. Tr. p. 216. She also stated that on September 15, 2001, Whiteley observed Halsema and Ritchie "baggin' up and cuttin' up" methamphetamine in the bedroom where Ritchie was staying. Tr. p. 215.

The jury found Halsema guilty of Class A felony possession of methamphetamine, Class A misdemeanor possession of marijuana, Class A misdemeanor reckless possession of paraphernalia, and Class A misdemeanor false informing. The jury

reached not guilty verdicts on all other counts. Halsema then admitted to being an habitual substance offender.

A sentencing hearing was held on June 24, 2002. The trial court sentenced Halsema to forty years for Class A felony possession of methamphetamine, and one year on each of the three Class A misdemeanor convictions, to be served concurrently. The trial court also enhanced Halsema's sentence by five years for the habitual substance offender determination, for a total sentence of forty-five years. The trial court then suspended six months of that sentence. Halsema now appeals.

## I. Sufficiency of the Evidence

██ Our standard of review for sufficiency claims is well settled. We do not reweigh the evidence or assess the credibility of witnesses. *Thompson v. State,* 728 N.E.2d 155, 159 (Ind.2000). We look to the evidence and the reasonable inferences to be drawn therefrom that support the judgment. *Id.* Where there is substantial evidence of probative value to support the judgment, it will not be disturbed. *Jordan v. State,* 691 N.E.2d 487, 489 (Ind. Ct.App.1998).

### A. *Convictions for Possession of Marijuana and Reckless Possession of Paraphernalia*

Halsema argues that his convictions for possession of marijuana and reckless possession of paraphernalia were not supported by sufficient evidence because the State failed to prove that he constructively possessed the marijuana and paraphernalia found in the vehicle. To sustain a conviction for possession of marijuana, the State had to present sufficient evidence

that Halsema knowingly or intentionally possessed the marijuana found in the vehicle. *See* Ind.Code § 35–48–4–11 (1998). Similarly, to obtain a conviction for reckless possession of the paraphernalia found in the vehicle, the State had to prove that Halsema recklessly possessed "a raw material, an instrument, a device, or other object that is to be used primarily for" introducing a controlled substance into the person's body, "testing the strength, effectiveness, or purity of a controlled substance," or "enhancing the effect of a controlled substance." *See* Ind.Code § 35–48–4–8.3 (1998).

██ "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." *Goliday v. State,* 708 N.E.2d 4, 6 (Ind.1999). The State must demonstrate the defendant's knowledge of the presence of the methamphetamine to prove the intent element. *See Armour v. State,* 762 N.E.2d 208, 216 (Ind. Ct.App.2002), *trans. denied.*

"This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." The defendant's proximity to contraband "in plain view" is an "additional circumstance" that will support an inference of intent in this context.[6] Also, "a substance can be possessed jointly by the defendant and another without any showing that the defendant

---

**6.** Such additional circumstances include: "(1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) a manufacturing setting; (4) proximity of the defendant to the contraband; (5) location of the contraband within the plain view of the defendant; and (6) location of the contraband within close proximity of items owned by the defendant." *Bradley v. State,* 765 N.E.2d 204, 212 (Ind.Ct.App.2002).

had actual physical control thereof." However, when possession is nonexclusive the State must demonstrate that the defendant had actual knowledge of the presence and illegal character of the substance.

*Id.* (internal citations omitted). To prove that the defendant had the capability to maintain dominion and control over the contraband, the State must demonstrate that the defendant is able to reduce the controlled substance to his personal possession. *Id.*

■ In this case, Halsema was sitting in the passenger seat of the vehicle. Officer Harris testified that a clear plastic bag containing marijuana was found on the front floorboard on the passenger side of the vehicle in plain view. Tr. p. 124. Officer Flynn stated that on the passenger side floorboard he found a hollowed out ballpoint pen on the end of which there was a tan colored residue that had been used to smoke methamphetamine, and a bag of methamphetamine was found in the crack between the driver and passenger seats, on the passenger side of the vehicle. Tr. pp. 40, 42. Additionally, when Officer Harris initiated the traffic stop, he observed Ritchie and Halsema bending down and making furtive gestures.

Given Halsema's proximity to the marijuana and paraphernalia, which were in plain view, the evidence presented at trial established that Halsema had both the intent and capability to maintain dominion and control over the contraband. Under these facts and circumstances, the evidence was sufficient to prove that Halsema constructively possessed the marijuana and the paraphernalia.

### B. *Possession of Methamphetamine*

Halsema also argues that the evidence was insufficient to sustain his conviction for possession of methamphetamine, as a Class A felony. Indiana Code section 35–48–4–6 provides:

(a) A person who, . . . knowingly or intentionally possesses . . . methamphetamine (pure or adulterated) commits possession of . . . methamphetamine.

(b) the offense is:

(3) a class A felony if the person possesses the . . . methamphetamine in an amount (pure or adulterated) weighing at least three (3) grams:

(B) in, on, or within one thousand (1,000) feet of:

(i) school property;

(ii) a public park;

(iii) a family housing complex; or

(iv) a youth program center.

Ind.Code § 35–48–4–6 (1998 & Supp.2002). Halsema argues that although Whiteley's residence is within 1000 feet of a school, there was no evidence presented at trial that scientifically proved 1) that the substance that Whiteley saw at her residence was methamphetamine or 2) the weight of that substance. Halsema also states that the only stipulation between himself and the State was that substance found in the vehicle was methamphetamine with a total weight of 112 grams.

■ Initially, we note that " 'a criminal conviction may be based solely upon circumstantial evidence.' " *Hill v. State*, 773 N.E.2d 336, 347 (Ind.Ct.App. 2002) (quoting *Woodson v. State*, 542 N.E.2d 1331, 1333 (Ind.1989)). Additionally, "the identity of a drug can be proven by circumstantial evidence." *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind.2001) (citation omitted).

■ At trial, Whiteley testified that on September 14, 2001, Halsema had stated that there was "some Mexican sellin' four gram eight balls for a hundred and forty-six dollars" and that night Whiteley saw

Halsema with methamphetamine in his possession. Tr. p. 216. Whiteley also stated that on September 15, 2001, she saw Halsema and Ritchie "baggin' up and cuttin' up" methamphetamine in the bedroom where Ritchie was staying. Tr. p. 215. Whiteley stated that she saw a "chunk [of methamphetamine] about the size of a charcoal." Tr. p. 220. Also, during the search of Whiteley's residence, Officer Harris found a bag of methamphetamine in a dresser drawer in that bedroom, which was admitted into evidence at trial. Tr. pp. 171, 173.

The State argues that this evidence is sufficient to establish that Halsema possessed over three grams of methamphetamine in Whiteley's residence, which is within 1000 feet of a school. In its Appellee's brief, the State contends that although it

did not introduce any testimony regarding the weight of the methamphetamine, the jurors were able to examine the bag and use their common sense and experience to determine whether the methamphetamine was at least three grams. Further, the jurors were able to compare the weight of the methamphetamine found in the dresser to the methamphetamine found in the car, which was 112 grams.

Br. of Appellee at 8.

Given the jury's common sense and ability to compare the apparent amount of the methamphetamine found in the dresser to that found in the vehicle, and Whiteley's description of the methamphetamine, the

State presented sufficient evidence to establish that the substance was methamphetamine weighing more than three grams.[7] Under these facts and circumstances, there was sufficient evidence to support Halsema's conviction for Class A felony possession of methamphetamine.

## II. Inconsistent Verdicts

Although our courts rarely reverse a conviction under a theory of inconsistent verdicts, "it is plainly the law in Indiana that we will review verdicts for consistency and take corrective action if necessary." *Owsley v. State,* 769 N.E.2d 181, 183 (Ind.Ct.App.2002) (citation omitted).

"When reviewing the consistency of jury verdicts, we will take corrective action only when the verdicts are 'extremely contradictory and irreconcilable.'" We will not attempt to interpret the thought process of the jury in arriving at its verdict, and "perfect logical consistency is not required."

*Edwards v. State,* 730 N.E.2d 1286, 1290 (Ind.Ct.App.2000) (quoting *Jones v. State,* 689 N.E.2d 722, 724 (Ind.1997)) (internal citations omitted).

Halsema argues that his convictions for possession of marijuana and reckless possession of paraphernalia are inconsistent with his conviction of Class A felony possession of methamphetamine. Halsema basically contends that because the jury believed that he constructively possessed the contraband in the vehicle, they should have only believed that he

7. In *Wattley v. State,* 721 N.E.2d 353 (Ind.Ct. App.1999), our court held that "[w]hen a defendant is charged with a drug offense that is determined by the weight of the substance involved, the State must prove that the scale used to weigh the substance was tested before and after its use." *Id.* at 355–56. In that case, our court reduced a Class A felony dealing in cocaine conviction to a Class B felony because although the cocaine's weight was 3.5 grams, no evidence of the scale's accuracy was admitted into evidence. *Id.* at 356. The facts of this case are distinguishable from those in *Wattley* because here 1) no scale was used to weigh the methamphetamine and 2) Whiteley's description of the methamphetamine clearly indicated that its weight was significantly more than three grams.

constructively possessed the methamphetamine in the vehicle, and not at Whiteley's residence, which was within 1000 feet of a school. Br. of Appellant at 13–14.

This is merely an additional claim that the evidence was not sufficient to support his Class A felony possession of methamphetamine conviction. However, as we stated above, there was sufficient evidence to support Halsema's conviction for Class A felony possession of methamphetamine, and it was not inconsistent for the jury to find that he constructively possessed the methamphetamine at Whiteley's residence and constructively possessed the marijuana and paraphernalia in the vehicle.

### Conclusion

There was sufficient evidence presented at trial that Halsema constructively possessed the marijuana and paraphernalia found in the vehicle. Also, the evidence was sufficient to sustain Halsema's conviction for Class A felony possession of methamphetamine. Finally, the jury's verdicts finding Halsema guilty of possession of marijuana, reckless possession of paraphernalia, and possession of methamphetamine were not inconsistent.

Affirmed.

BAKER and RILEY, JJ., concur.