Ritchie HALSEMA, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

Frank L. Halsema, Appellant
(Defendant below),

v.

State of Indiana, Appellee
(Plaintiff below).

Nos. 79S04–0307–CR–350,
79S02–0307–CR–351.

Supreme Court of Indiana.

March 9, 2005.

Thomas J. O'Brien, O'Brien & Dekker, Lafayette, IN, Attorney for Appellant, Ritchie Halsema.

Phillip R. Smith, Helmerick & Smith, Lafayette, IN, Attorney for Appellant, Frank L. Halsema.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

Is the weight of a given quantity of drugs a matter of general knowledge and experience that jurors possess? On this record we conclude it is not.

## Background

Tried as co-defendants, cousins Frank and Ritchie Halsema were convicted of several drug-related offenses including possession of methamphetamine within 1000 feet of a school. They pursued separate appeals. One issue common to both was whether, in the absence of scientific measurement, there was sufficient evidence to demonstrate that the weight of the drugs was at least three grams. In Frank Halsema's case, one panel of the Court of Appeals said yes. *See Halsema v. State,* 783 N.E.2d 1199, 1205 (Ind.Ct. App.2003) (holding that jurors can "use their common sense and experience to determine whether [the drugs were] at least three grams"). In the case of Ritchie Halsema, another panel of the Court said no. *See Halsema v. State,* 79A04-0207-CR-316, 784 N.E.2d 591 (Ind.Ct.App., March 6, 2003) ("We are unpersuaded by the State's argument that such a specific determination of weight should be left to the 'common sense and experience' of a jury."). We now address these two cases in a consolidated opinion.

## Facts and Procedural History

In the late evening hours of September 15, 2001, a West Lafayette patrol officer observed a 1984 Chrysler LeBaron with a defective exhaust traveling along U.S. Highway 52 in Tippecanoe County. The passenger was not wearing a seat belt. Following for about a mile the officer observed the car twice swerve across the center line. Activating his lights to initiate a traffic stop, the officer observed the two occupants in the car bending down and making furtive gestures. A license plate check revealed that the car was registered

to a person by the name of Juliet Whiteley, whose address was 1216 Shenandoah Drive, Lafayette, Indiana. When the officer approached the car, he saw a case of beer on the back seat, observed that the driver's eyes were bloodshot, and smelled an odor of alcohol on his breath. The driver identified himself as Ritchie Halsema, advised the officer he lived at 1216 Shenandoah Drive, and informed the officer that his driver's license was suspended. He was arrested.

Other officers arrived on the scene. When asked to identify himself, the passenger of the car said that his name was Lonnie Halsema. He was later identified as Frank Halsema. As one of the officers was giving Frank Halsema a citation for not wearing a seat belt, he saw on the passenger side of the car a clear plastic bag containing a green leafy substance. Suspecting the substance was marijuana, the officer placed Frank under arrest.

The officers then searched the car and found throughout a large quantity of individually wrapped bags of what later was identified as methamphetamine and a number of pills later identified as schedule II controlled substances. In the trunk of the car, the officers found a set of digital scales and various drug paraphernalia. Both Frank and Ritchie stipulated at trial that the total amount of methamphetamine found in the car was 112 grams.

The following day officers went to 1216 Shenandoah Drive, which is located within 1000 feet of a school, and spoke with Juliet Whiteley. Also present was Whiteley's three-year-old daughter and a man by the name of Roger Ferguson. Whiteley informed the officers that she leased the premises, that Ritchie was a friend, that he had been staying in the house for the past five to seven days, and that he slept in her bedroom while she slept on a couch downstairs. Whiteley signed a written consent

form giving the officers permission to search the residence. During the search, officers confiscated methamphetamine from both Whiteley and Ferguson. They also seized a quantity of methamphetamine from a dresser drawer in the bedroom where Ritchie had been staying. The drawer also contained a black organizer bearing Ritchie's name, along with documents also bearing his name.

The State charged Ritchie Halsema with dealing in methamphetamine, a Class A felony; possession of methamphetamine within 1000 feet of a school, a Class A felony; conspiracy to commit dealing in methamphetamine, a Class A felony; possession of a schedule II controlled substance, a Class D felony; maintaining a common nuisance, a Class D felony; operating a motor vehicle as an habitual traffic offender, a Class D felony; possession of marijuana, a Class A misdemeanor; and reckless possession of paraphernalia, a Class A misdemeanor. Ritchie was also alleged to be an habitual substance offender.

The State charged Frank Halsema with dealing in methamphetamine, a Class A felony; possession of methamphetamine within 1000 feet of a school, a Class A felony; conspiracy to commit dealing in methamphetamine, a Class A felony; maintaining a common nuisance, a Class D felony; possession of marijuana, a Class A misdemeanor; reckless possession of paraphernalia, a Class A misdemeanor; and false informing, a Class A misdemeanor. Frank also was alleged to be an habitual substance offender.

After a trial by jury in which the Halsemas appeared as co-defendants, Ritchie Halsema was found guilty as charged. He thereafter admitted to being an habitual substance offender. Frank Halsema was found guilty of possession of methamphetamine within 1000 feet of a school, posses-

sion of marijuana, reckless possession of paraphernalia, and false informing. He was acquitted of the remaining charges. Frank Halsema also admitted to being an habitual substance offender. The trial court imposed forty-year concurrent sentences on Ritchie Halsema's two Class A felony convictions, imposed various concurrent terms of years for the remaining convictions, and enhanced the sentence by five years for the habitual offender adjudication for a total executed term of forty-five years. As for Frank Halsema, the trial court imposed a forty-year sentence for the Class A felony conviction, imposed various concurrent terms of years for the remaining convictions, enhanced the sentence by five years for the habitual offender adjudication, and suspended six months to probation for a total executed term of forty-four years and six months.

The Halsemas pursued separate appeals. Frank Halsema raised three issues: (1) whether there was sufficient evidence to support his convictions for possession of marijuana and reckless possession of paraphernalia; (2) whether there was sufficient evidence that he possessed at least three grams of methamphetamine within 1000 feet of a school; and (3) whether the jury's verdict finding him guilty of possession of methamphetamine, possession of marijuana, reckless possession of paraphernalia, and false informing was inconsistent. The panel reviewing the appeal affirmed the convictions. Ritchie Halsema raised two issues on appeal: (1) whether Juliet Whiteley had the authority to give consent to search a dresser drawer containing his personal effects; and (2) whether there was sufficient evidence that he possessed at least three grams of methamphetamine within 1000 feet of a school. Ritchie Halsema did not challenge his other convictions. Finding it unnecessary to reach the first issue, the panel reviewing this appeal reversed Ritchie Halsema's conviction for possession of methamphetamine within 1000 feet of a school.

Frank Halsema petitioned to transfer his case and the State petitioned to transfer Ritchie Halsema's case. Having previously granted both petitions, we now address whether there was sufficient evidence to demonstrate that the weight of the drugs was at least three grams. Finding there was not sufficient evidence, we reverse the Halsemas' convictions for possession of methamphetamine within 1000 feet of a school as Class A felonies. In Frank Halsema's case we summarily affirm the remainder of the Court of Appeals' opinion. As for Ritchie Halsema, we also address whether the trial court erred by admitting into evidence the methamphetamine seized from the dresser drawer.

## Discussion

Relevant to our discussion, the Halsemas were charged with and convicted of possession of methamphetamine under Indiana Code section 35–48–4–6 which provides in relevant part:

(a) A person who ... knowingly or intentionally possesses ... methamphetamine (pure or adulterated) commits possession of ... methamphetamine, a Class D felony, except as provided in subsection (b).

(b) The offense is ...

(3) a Class A felony if the person possesses the ... methamphetamine in an amount (pure or adulterated) weighing at least three (3) grams ...

(B) in, on, or within one thousand (1,000) feet of:

(i) school property;

(ii) a public park;

(iii) a family housing complex; or

(iv) a youth program center

Ind.Code § 35–48–4–6 (West Supp.2004). We first observe, and all parties seem to agree, the methamphetamine that is the subject of this offense was found in a bedroom dresser drawer at the residence. Apparently the car was not located in, on or near the prohibited sites. There is no question that the residence from which the drugs were seized was located within 1000 feet of school property, specifically the Glen Acres Elementary School and the Kiddie Kollege Day Care, a licensed day care facility. The Halsemas stipulated as much at trial. *See* Appellant's App. at 364. The issue is joined on the question of whether there was sufficient evidence that the drugs seized from the residence weighed at least three grams.[1] Acknowledging that it introduced no evidence concerning the weight of the drugs found in the bedroom dresser drawer, the State argues, "[T]he jurors were able to examine the bag and use their common sense and experience to determine whether the methamphetamine was at least three grams." Br. of Appellee at 9 (*Ritchie Halsema v. State*); Br. of Appellee at 8 (*Frank Halsema v. State*). As we indicated earlier in this opinion, one panel of the Court of Appeals agreed with the State's position, while another panel did not.

█ In the instant case the weight of the drugs is an essential element of the offense. That is so because possession of methamphetamine in excess of three grams within 1000 feet of a school enhances the offense from a Class D felony to a Class A felony. As with any other essential element, it must be proven by the State beyond a reasonable doubt. *See Hutcherson v. State*, 178 Ind.App. 8, 381 N.E.2d 877, 881 (1978) (reversing conviction for possession of over ten grams of a controlled substance where State failed to prove weight, an essential element), *trans. denied.*

█ It is certainly true that when determining whether an element exists, the jury may rely on its collective common sense and knowledge acquired through everyday experiences. *See* 12 Robert Lowell Miller, Jr., *Indiana Evidence* § 201.101 (1995) ("[J]urors are instructed to use their own knowledge, experience and common sense in weighing evidence...."); 27 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6075, at 450 (1990) ("Obviously, no juror can or should approach deliberations with an entirely clean cognitive slate. Humans can make intelligent decisions only by drawing upon their accumulated background knowledge and experience. Jurors are not only permitted to make decisions in this manner, it is expected of them[.]"); *see also Sullivan v. State*, 517 N.E.2d 1251, 1253 (Ind.Ct.App.1988) (noting that "based upon common sense

---

1. Frank Halsema also contends that because the identity of the drugs was not "scientifically determined" his conviction for possession of methamphetamine within 1000 feet of school property cannot be sustained. Br. of Appellant at 12. The identity of a drug can be proven by circumstantial evidence. *Clifton v. State*, 499 N.E.2d 256, 258 (Ind.1986). In the absence of expert testimony based on chemical analysis, this may include the "testimony of someone sufficiently experienced with the drug indicating that the substance was indeed a dangerous drug." *Slettvet v. State*, 258 Ind. 312, 280 N.E.2d 806, 808 (1972). Here, investigating officer Troy Harris testified that he received special training concerning the production, manufacture, and distribution of methamphetamine. Appellant's App. at 191–92. The officer explained that the drug is highly addictive, that it can be produced from various household items, and he described the various methods of ingestion. *Id.* When asked to identify State's Exhibit # 30, the contents of a plastic evidence bag containing items retrieved from the bedroom dresser drawer, Officer Harris testified, "it's methamphetamine." Appellant's App. at 241–42. This testimony was sufficient.

and experience gained from everyday living" the jury could reasonably conclude that defendant's blood-alcohol level was higher at the time he was driving than it was at the time he was tested), *trans. denied.*

However, a juror's ability to determine the existence of a fact in issue based on his or her common sense and experience is not unlimited. Although our research has revealed no Indiana authority on point, we find instructive a North Carolina case in which a defendant's conviction for felonious possession of marijuana was reversed where the State introduced no evidence of weight. The Court observed, "The jury may not find the existence of a fact based solely on its in-court observations where the jury does not possess the requisite knowledge or expertise necessary to infer the fact from the evidence as reflected in the record." *State v. Mitchell,* 336 N.C. 22, 442 S.E.2d 24, 28 (1994). This seems to us an eminently sensible observation. As applicable here, we are not persuaded that the weight of a given quantity of drugs, especially when expressed in a metric unit of measurement, is a matter of general knowledge and expertise. Rather, as the *Mitchell* court observed with respect to marijuana, "[t]his is a matter familiar only to those who regularly use or deal in the substance, who are engaged in enforcing the laws against it, or who have developed an acute ability to assess the weight of objects down to the ounce. The average juror does not fall into any of these categories." *Id.* We agree.

This is not to say there are no circumstances under which a jury could reasonably conclude, based on in-court observation, that certain drugs or controlled substances satisfy a weight requirement. Rather, we hold that in order to prove the element of weight of drugs or controlled substances, the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of the drugs or controlled substances is so large as to permit a reasonable inference that the element of weight has been established. *See id.*

The record shows that the methamphetamine seized from the car was submitted to the Indiana State Police Laboratory for analysis. The written report, which was stipulated into evidence, shows a combined weight of 112.08 grams.[2] For reasons not apparent from the record or explained by the State, the methamphetamine seized from the residence was not submitted to the Laboratory. The only thing the record tells us about the quantity of the drugs seized from the residence is found in the following exchange:

> [Deputy Prosecutor]: I think I already asked you this but to clarify it, other than the methamphetamine found on Juliet Whiteley ... and Roger Ferguson ... [and] the methamphetamine found [in the bedroom dresser drawer], was there any other methamphetamine found in Shenandoah Drive 1216 on September the 16th?
>
> [Officer Harris]: Not to my knowledge.

**2.** State's Exhibit # 13, the "Certificate of Analysis" from the Indiana State Police Laboratory, lists twenty individually marked items identified as containing methamphetamine. The items ranged in weight from less than .01 grams to 55.63 grams. More specifically, eleven of the items were identified as containing less than three grams; seven were identified as containing slightly more than three grams; one was identified as containing 27.45 grams; and one was identified as containing 55.63 grams. *See* State's Ex. # 13.

[Deputy Prosecutor]: Well let me ask you this, was there any significant amount of methamphetamine found inside 1216 as—

[Officer Harris]: No.

[Deputy Prosecutor]:—compared to the—to the hundred and twelve grams—

[Officer Harris]: No, nothing close to that.

[Deputy Prosecutor]:—found in the vehicle that Ritchie Halsema was driving with Frank Halsema?

Appellant's App. at 247–48.

The State introduced into evidence eight exhibits of clear plastic baggies identified as containing methamphetamine. Some of the exhibits contained multiple smaller baggies of methamphetamine. Included in the eight exhibits was Exhibit # 30, the methamphetamine seized from the bedroom dresser drawer. It is not among the exhibits containing multiple baggies. Although the laboratory marked and labeled the individually packaged drugs, ranging in weight from less than .01 grams to 55.63 grams, see supra, n. 2, the State made no effort to correlate the laboratory results with the trial exhibits. Further, the record provides no description of the drugs other than "methamphetamine in a baggie." As a result, there is no reference point to determine whether the methamphetamine seized from the bedroom dresser drawer is similar in size, weight or density to the individually packaged methamphetamine analyzed and weighed by the Laboratory.

Seizing on an observation made by the Court of Appeals in Frank Halsema's case the State for the first time now emphasizes certain testimony given by Juliet Whiteley. According to Whiteley, the night before the arrest the Halsemas were present at her home "cuttin[g] up crystal meth and they were cuttin[g] up bags puttin[g] it in bags and wrappin[g] ties around it." Appellant's App. at 289. Whiteley testified that the methamphetamine was a "chunk about the size of a charcoal." Id. at 292. According to the State this testimony supports a conviction of possession of more than three grams of methamphetamine within 1000 feet of a school. Br. in Support of Pet. to Transfer at 5.

First, it is not at all clear to us just exactly what role the testimony about this alleged charcoal-sized chunk of drugs played in the State's theory of this case. The State made no mention of it in its closing argument to the jury, nor did it mention the testimony in its brief before the Court of Appeals. In any event, regardless of whatever purposes this testimony may have served, only the methamphetamine seized from the bedroom dresser drawer provided the basis for the charge that the Halsemas possessed at least three grams of methamphetamine within 1000 feet of a school. And the record is clear that in comparison to the drugs found in the car, the amount of drugs found at the residence, including the drugs seized from Whiteley and Ferguson, was not "significant."

At the end of the day the record in this case simply does not support the view that the quantity of methamphetamine seized from the bedroom dresser drawer was so large that the jury could infer that it weighed at least three grams. Accordingly, we reverse the Halsemas' convictions for possession of methamphetamine as Class A felonies.

■ In the case of Frank Halsema we remand this cause to the trial court with instructions to impose sentence for possession of methamphetamine within 1000 feet

of a school as a Class B felony.[3] *See* I.C. § 35–48–4–6(b)(2) (West Supp.2004) (possession of less than three grams within 1000 feet of school property is a Class B felony). However, as explained in more detail below, remand for imposition of a lesser-class offense is not appropriate in the case of Ritchie Halsema.

Before the Court of Appeals, Ritchie Halsema argued that the trial court erred by admitting into evidence over his objection the methamphetamine seized from the residence.[4] More specifically, Ritchie Halsema complained that the seizure was the product of Whiteley's consent to search, which he contended Whiteley had no authority to give. Because the Court of Appeals reversed the conviction on other grounds, it did not reach this issue. We do so now.

 Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Perry v. State,* 638 N.E.2d 1236, 1240 (Ind.1994). In cases involving a warrantless search the State bears the burden of proving an exception to the warrant requirement. *Short v. State,* 443 N.E.2d 298, 303 (Ind.1982). A valid consent is such an exception. *Joyner v. State,* 736 N.E.2d 232, 242 (Ind.2000). This includes consent given by a third party having common authority or a sufficient relationship to the premises to be searched. *Perry,* 638 N.E.2d at 1240–41.

In *Krise v. State,* 746 N.E.2d 957 (Ind. 2001) the defendant shared a house with a roommate. The roommate consented to a general search of the house, which ultimately led to the discovery and search of the defendant's purse. That search, in turn, revealed marijuana and a white powdery substance later identified as methamphetamine. After a careful and exhaustive review of what we characterized as the "twists and turns of Fourth Amendment law" with respect to warrantless searches, *id.* at 961, this Court ultimately reversed the defendant's conviction of possession of a controlled substance within 1000 feet of a public park on the ground that the defendant's roommate lacked authority to consent to a warrantless search of the defendant's purse. We held "the inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority—actual or apparent—to give consent to the search of the container itself." *Id.* at 969. Acknowledging that we had previously addressed cases involving third-party consent searches of a shared home and its contents, we noted, "none of these cases dealt with a third-party's authority to consent to search something like a *purse,* i.e., a closed container that normally holds highly personal items, located within the home." *Id.* at 968 (emphasis in original).

 The dresser drawer in this case is analogous to the purse in *Krise*—a closed container normally holding highly personal items. The record is clear that Ritchie Halsema did not give officers con-

---

**3.** Because neither Frank nor Ritchie was present at the residence when the drugs were found, apparently the State pursued this charge under the theory of constructive possession. A defendant is in constructive possession of drugs when the State shows that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs. *Gee v. State,* 810 N.E.2d 338, 340 (Ind.2004). Neither defen-

dant makes a claim challenging this aspect of his conviction for possession of methamphetamine within 1000 feet of a school. We therefore do not address this issue and express no opinion on its merits.

**4.** The record reveals that Frank Halsema specifically responded with "no objection" to the admission of the evidence. Appellant's App. at 244.

sent to search the drawer. Thus the question is whether Whiteley, as a third party, had the actual or apparent authority to give consent. Actual authority "requires a showing that there is a sufficient relationship to or 'mutual use of the property by persons generally having joint access or control for most purposes.'" *Id.* at 967 (internal quotation omitted). As for apparent authority, "a search is lawful if the facts available to the officer at the time would 'warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.'" *Id.*

▉ In this case, in a hearing outside the presence of the jury for the express purpose of determining what authority if any Whiteley had to give consent, the following exchange occurred:

[Defense Counsel]: [I]t's my understanding that according to your testimony that Ritch had been staying at your house the past several days?

[Whiteley]: Correct.

[Defense Counsel]: Is that correct?

[Whiteley]: Yes.

[Defense Counsel]: Okay. And up in the—he slept actually in your bedroom?

[Whiteley]: Yes.

[Defense Counsel]: Okay. And in your bedroom there was a dresser, correct?

[Whiteley]: Correct.

[Defense Counsel]: Okay. And that dresser you gave them—you cleared out some drawers for him and said these are your drawers?

[Whiteley]: Yes, I did.

[Defense Counsel]: And those drawers that were gonna be for him exclusively?

[Whiteley]: Yes.

[Defense Counsel]: I think that you also—you testified it was—you didn't know what he kept in there, you didn't

go in those drawers, that those were his?

[Whiteley]: That's correct.

[Defense Counsel]: When the police officers came over to search that night, you told them those were Ritchie's drawers?

[Whiteley]: Yes.

[Defense Counsel]: Okay. And the ones there in the dresser in the bedroom, those are Ritchie's?

[Whiteley]: Yes.

Appellant's App. at 220–21. Because Ritchie Halsema enjoyed the exclusive use of at least one of the dresser drawers in Whiteley's bedroom and because Whiteley specifically advised the officers of that fact, Whiteley did not have actual authority to consent to a search of the drawer where the methamphetamine was found, nor could an officer reasonably believe that she had such authority. In sum, the record here shows that Whiteley had neither the apparent nor actual authority to consent to a search of the dresser drawer. Thus the warrantless search of the drawer without Ritchie Halsema's consent violated his Fourth Amendment right against unreasonable search and seizure. The trial court erred by admitting the seized drugs into evidence. Accordingly Ritchie Halsema's conviction for possession of methamphetamine within 1000 feet of a school must be vacated. Ritchie Halsema's remaining convictions and sentences, including his forty-year sentence for dealing in methamphetamine, a Class A felony, are affirmed.

### Conclusion

In order to prove the element of weight of drugs or controlled substances, the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of drugs or controlled substances is so large as to permit a reasonable inference that the element of

weight has been established. In this case the State failed to carry its burden. As a result, the Halsemas' convictions for possession of methamphetamine within 1000 feet of a school as Class A felonies are reversed. In Frank Halsema's case we remand this cause to the trial court with instruction to impose sentence as a Class B felony. In Ritchie Halsema's case we remand with instructions to vacate the conviction.

SULLIVAN and BOEHM, JJ., concur.

SHEPARD, C.J., concurs in part and dissents in part with separate opinion. DICKSON, J., joins.

SHEPARD, Chief Justice, concurring in part, and dissenting in part.

Juliet Whiteley gave the police permission to conduct a search of a bureau she owned in her home—a bureau she used and shared with Ritchie Halsema. (As she might well have said, "I'll use these drawers, Ritchie, you use that one.") As for whether her permission was good enough for Fourth Amendment purposes, I am reminded of what Justice Thurgood Marshall wrote when a defendant claimed his cousin could not give permission to search the duffel bag they shared, each using separate compartments to store their stuff: "We will not, however, engage in such metaphysical subtleties in judging the efficacy of [the cousin's] consent." *Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). I think Ms. Whiteley's consent was sufficient, largely on the basis that a unanimous U.S. Supreme Court found the cousin's permission adequate.

An individual's consent to a search of his or her residence is effective for searches of the common areas but not always for searches of closed objects inside the home. Consent to search a container is effective only when given by one with "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). *See also United States v. Karo*, 468 U.S. 705, 725, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); *Krise v. State*, 746 N.E.2d 957, 967 (Ind.2001). Common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes ..." *Matlock*, 415 U.S. at 171, n. 7, 94 S.Ct. 988.

Juliet Whiteley enjoyed use, access, and control of the dresser in the bedroom, and she thus had actual authority to consent to a search of the dresser. Whiteley was the sole lessee of the residence in which the dresser drawer containing Ritchie's methamphetamine sat. Prior to the search, Ritchie was merely a guest of five to seven days. He stored his belongings in the top dresser drawer in Whiteley's bedroom, which is also where he slept.

Whiteley had the right to eject Ritchie and his belongings, and retain the dresser, at a moment's notice. Whiteley continued to use the dresser and store her belongings in other drawers. Her right to remove Ritchie's belongings from the top drawer did not cease upon granting him use of it. When Ritchie decided to store his methamphetamine in a shared dresser, he assumed the risk that Whiteley would allow someone else to look inside. *Matlock*, 415 U.S. at 171, n. 7, 94 S.Ct. 988.

Our decision in *Krise* does not mandate suppressing Ritchie's methamphetamine. The purse in *Krise* and the dresser in this case are both closed containers normally holding highly personal items. But the type of container searched is relevant in a determination of whether there was a reasonable expectation of privacy in the container, *see United States v. Jacobsen*, 466 U.S. 109, 120 n. 17, 104 S.Ct. 1652, 80

L.Ed.2d 85 (1984), and also whether a third party had *apparent* authority to consent to a search. *See United States v. Basinski,* 226 F.3d 829, 834 (7th Cir.2000). The relevant inquiry here is whether the third party giving consent to the search had *actual* authority to do so.

The purse searched in *Krise* quite obviously belonged to a female, and the male roommate who consented to the search never had mutual use, joint access to, or control over the purse. We had little trouble concluding the male roommate had no actual authority over a purse he did not use, access, or control. *Krise,* 746 N.E.2d at 971. Our conclusion in *Krise* flows from facts about ownership of the container that, if anything, suggest that the trial court got it right in the present case.

I thus join the Court's decision concerning Frank Halsema, but dissent from the decision to vacate Ritchie Halsema's conviction for possession of methamphetamine.

DICKSON, J., joins.