**David Jeffrey LEE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A05–0405–CR–267.

Court of Appeals of Indiana.

April 27, 2005.

Transfer Denied July 13, 2005.

videotapes that were previously viewed by Lee's fiancée; and,

II. Whether the Fourth Amendment permitted the police, without first obtaining a search warrant, to view videotapes that were not previously viewed by Lee's fiancée.

Concluding the police were only permitted to view the videotapes that had already been viewed by Lee's fiancée, we affirm in part, reverse in part, and remand.[1]

## Facts and Procedural History

Margaret Lee ("Margaret") owns a home in Highland, Indiana. Margaret's son, Lee, and his fiancée, Melissa Koczur ("Koczur"), are the sole occupants of Margaret's home. Lee operates a photography studio in the basement of this home, and Koczur assisted Lee in operating this studio.

While not in Lee's studio, Koczur spent most of her time in the kitchen and living room, and Koczur slept in the living room. Tr. p. 5. Koczur very rarely went into the bedrooms of Lee's residence and was told by Lee that he preferred that she not go in the bedrooms because they were extremely unkempt. Tr. p. 17. Occasionally, the doors to Lee's bedrooms were locked when Koczur attempted to gain access to them. *Id.*

On May 10, 2003, Koczur went into Lee's basement and noticed an open box of videotapes and stacked videocassette recorders. Koczur viewed one of these tapes, and found that it contained images of a girl undressing in the changing room of Lee's studio. Koczur viewed two other tapes, which depicted the same girl at different angles.

Benjamen W. Murphy, Murphy Yoder Law Firm, P.C., Merrillville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

David Lee's ("Lee") Motion to Suppress was denied in the Superior Court of Lake County. Lee appeals, raising the following two restated issues for review:

I. Whether the Indiana Constitution permitted the police, without first obtaining a search warrant, to view

1. We heard oral argument in this matter on March 24, 2005 at Ball State University. We thank Ball State for its hospitality in hosting the oral argument and commend counsel on the quality of their presentations.

Koczur took the tapes she had viewed, as well as thirteen others that were nearby, to a local police station where she told Officer Michael O'Donnell ("Officer O'Donnell") that she lived with Lee, she and Lee operated a photography studio, she had found the videotapes she had with her, and those videotapes showed that Lee was secretly filming women undressing in his studio's changing room.[2] Officer O'Donnell, without first obtaining a search warrant, viewed the three tapes that had already been viewed by Koczur and ran Lee's drivers license, which revealed that Lee had an outstanding warrant from Parke County.

Koczur, Officer O'Donnell, and Officer Timothy Towasnicki ("Officer Towasnicki") drove to Lee's residence. Lee was at his residence when the officers arrived and was immediately arrested and removed from his residence. The officers then had Koczur sign a consent form and began a warrantless search of Lee's residence.

After the search began, Koczur advised Officer Towasnicki that Lee's mother, Margaret, owned the home. Officer Towasnicki immediately informed Officer O'Donnell that they needed to stop searching. After obtaining Margaret's consent, the officers resumed their search and discovered five hidden cameras in the changing room of Lee's studio, five videocassette recorders, and 369 videotapes in boxes in Lee's bedroom. Koczur did not own any of these tapes and had not seen them before the day in question. Tr. pp. 7–8, 11–12.

On June 5, 2003, Lee was charged with thirty-six counts of Class D felony voyeurism.[3] On February 18, 2004, Lee filed a motion to suppress. The trial court denied Lee's motion but certified its order for interlocutory appeal. This court has since acquired jurisdiction.

## I. Standard of Review

■ The denial of a motion to suppress is reviewed similar to a sufficiency claim. *Bell v. State*, 818 N.E.2d 481, 484 (Ind.Ct. App.2004). We will not reweigh the evidence or judge witness credibility but, instead, consider all uncontradicted evidence together with the conflicting evidence that supports the trial court's decision. *Id.*

## II. Admissibility of the Videotapes Previously Viewed by Koczur

■ Lee concedes that the Fourth Amendment did not require the police to obtain a search warrant before viewing the three videotapes previously viewed by Koczur. Br. of Appellant at 17 (citing *United States v. Jacobsen*, 466 U.S. 109, 116–18, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (the police may examine what has already been examined by a private citizen)). Rather, Lee contends that the separate and additional protection against unreasonable search and seizure under Article One, Section Eleven of the Indiana Constitution required the police to obtain a warrant before viewing the tapes already viewed by Koczur. We disagree.

In *Bone v. State*, a computer repairman discovered child pornography on one of his customer's computers and called the police to investigate. 771 N.E.2d 710, 712–13 (Ind.Ct.App.2002). Upon arrival, the police had the repairman show them the images in question without first obtaining a search warrant. *Id. Bone* concluded that

---

2. Koczur was visibly upset when she presented the tapes, and our review of the record leads us to believe Officer O'Donnell understood Koczur had not seen the tapes before

the day in question and claimed no ownership interest in them. Tr. p. 117.

3. Ind.Code § 35–45–4–5 (2004).

the Indiana Constitution allowed the police to view the images already viewed by the repairman without first obtaining a search warrant. *Id.* at 715. In so holding, *Bone* stated:

> [The] right to be free from unreasonable searches and seizures under the Indiana Constitution is a right judged upon the standard of "the reasonableness of the official behavior." However, the protection is also from "official and not private acts." ... Here a private party saw what he believed to be child pornography, which he showed to police, and we do not read *Shepherd* [*v. State,* 690 N.E.2d 318 (Ind.Ct.App.1997), *trans. denied,*] to hold that a warrant was first required to be obtained in order for the police to view that which [the repairman] had seen.

*Id.* (quoting *Moran v. State,* 644 N.E.2d 536, 539, 540 (Ind.1994) (internal citations omitted)).

*Bone's* holding controls the issue before us, and the police were allowed to view the three videotapes already viewed by Koczur without a search warrant.

### III. Tapes Not Viewed by Koczur

■ However, our conclusion is not transferable to the tapes which Koczur had not previously viewed. There is a well-established Fourth Amendment privacy interest in filmed images like videotapes. In *Walter v. United States,* the Supreme Court concluded that the warrantless police viewing of film violated the Fourth Amendment. 447 U.S. 649, 654, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). In so holding, the Court stated:

> Even though the cases before us involve no invasion of the privacy of the home ... we are nevertheless persuaded that the unauthorized exhibition of the films constituted an unreasonable invasion of their owner's constitutionally protected interest in privacy. It was a search; there was no warrant; the owner had not consented[.]

*Id.*[4] *See also Cortese v. Black,* 87 F.3d 1327 (10th Cir.1996) (applying Fourth Amendment protections to videotapes); *Rice v. Grecar,* 1996 U.S.App. LEXIS 6120 (6th Cir.1996); *United States v. Jenkins,* 46 F.3d 447, 452–61 (5th Cir.1995); *United States v. Simpson,* 904 F.2d 607, 610 (11th Cir.1990).

Under *Walter,* the police review of the videotapes not previously viewed by Koczur presents us with a "search within a search" or a "container search" conducted during the otherwise consented-to search of Lee's home. Clearly, Koczur and Margaret's authority and consent permitted the officers to search Lee's residence without a warrant. However, neither Koczur's nor Margaret's authority extended to the viewing of the contents of the private containers, Lee's videotapes, that Koczur had not viewed herself. And for Fourth Amendment purposes, each unmarked videotape was just such a private container.

Our supreme court recently gave Fourth Amendment consideration to the limits of third-party consent to the search of containers encountered during the search of a home in *Halsema v. State,* 823 N.E.2d 668

---

4. The State contends *Walter* is not controlling because it is a plurality opinion and only two justices recognized a Fourth Amendment privacy interest in videotapes. We disagree. The justices concurring in result agreed with the majority's contention that Walter had a right to privacy concerning the films. *Walter,* 447 U.S. at 654, 660, 100 S.Ct. 2395 ("the Government's warrantless projection of the films constituted a search that infringed petitioners' Fourth Amendment interests"). Although Justice Marshall concurred in the judgment without issuing a written opinion, he could not have agreed to suppress the films without recognizing a Fourth Amendment privacy interest in them. *Id.* at 660.

(Ind.2005). In that case, our supreme court stated:

> Because Ritchie Halsema enjoyed the exclusive use of at least one of the dresser drawers in Whiteley's bedroom and because Whiteley specifically advised the officers of that fact, Whiteley did not have actual authority to consent to a search of the drawer where the methamphetamine was found, nor could an officer reasonably believe that she had such authority. In sum, the record here shows that Whiteley had neither the apparent nor actual authority to consent to a search of the dresser drawer. Thus the warrantless search of the drawer without Ritchie Halsema's consent violated his Fourth Amendment right against unreasonable search and seizure.

*Id* at 677; *see also Krise v. State,* 746 N.E.2d 957, 971 (Ind.2001) ("Tungate gave a voluntary consent to the general search of the home which he shared with Krise and had authority to do so. However, the State has not proven that Tungate had mutual use of or joint access to Krise's purse").[5]

The State asserts that, because the videotapes were in open boxes in Lee's bedrooms, Koczur had the ability to view them and the police were permitted to rely upon Koczur's consent. However, the purse searched in *Krise* was found in the open on the top of a commode. *Krise,* 746 N.E.2d at 960. If third-party consent is insufficient for a container sitting on top of a commode in a room to which the consenting party had access, it must also be insufficient for a container in a room to which Koczur was occasionally locked out of and was told by the person having authority over the room that he preferred that she not enter it. *See* Tr. p. 17.

█ It might also be argued that a purse or dresser is distinguishable from a videotape because a purse and a dresser belong to a specific individual whereas an unmarked videotape might be intended for general household consumption. However, Officer O'Donnell admits that he assumed Koczur had not seen the videotapes before

---

5. The State claims a defendant does not have the same privacy interest in unmarked videotapes as he or she would in a purse or dresser. However, we believe that an unmarked tape could well contain information that would be even more private than that expected to be found in a dresser or in a purse. Furthermore, as discussed above, there is a recognized Fourth Amendment privacy interest in a videotape.

The State points to the legitimacy of field tests of powder, later discovered to be cocaine by law enforcement officers. However, the State's example is distinguishable from the case at bar, as well as from *Krise* and *Halsema,* because the Fourth Amendment privacy interest in an unmarked videotape is considerably greater than the lesser privacy interest in visible powder. *See Krise,* 746 N.E.2d at 969 ("the type of container is of great importance in reviewing third-party consent search cases. Absent one of the well-delineated exceptions to the warrant requirement, '[a] container which can support a reasonable expec-

tation of privacy may not be searched, even on probable cause, without a warrant.' ") (quoting *United States v. Jacobsen,* 466 U.S. 109, 120 n. 17, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).

We acknowledge that the decision in *Halsema* was by a three-to-two vote of the court, although we note that *Halsema* involved containers within containers, thereby differing from the facts before us. We also recognize merit in Chief Justice Shepard's dissent, joined by Justice Dickson. The containers involved in *Halsema* and in *Krise* differed in their attributes of privacy and with regard to whether valid access by others to the containers was clearly demonstrated. Nevertheless, the videotape cassette containers in our case, as to Koczur and Margaret, were not accessible without a violation of Lee's right to privacy. Accordingly, the consent present in *Halsema* and alleged in *Krise* is not present in the case before us except as to the three tapes viewed by Koczur and taken by her to the police.

the day in question. Tr. p. 117. The fact that the videotapes were not stored in a manner consistent with common availability for entertainment viewing, the unmarked nature of the videotapes, and the circumstances surrounding Koczur's discovery and presentation of the videotapes to Officer O'Donnell would lead a reasonable person to the same conclusion reached by Officer O'Donnell. Officer O'Donnell's conclusion undermines the possibility that a reasonable person might believe Lee's tapes were meant to be generally available to Koczur or Margaret for household consumption,[6] and *Krise* and *Halsema* are controlling.

█ The State does not claim exigent circumstances, and the fact that the police had probable cause to believe that the unmarked videotapes at issue contained illegal images does not justify the warrantless police review of the unmarked videotapes. *See Halsema*, 823 N.E.2d at 676 ("Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure."). A law enforcement official's determination that probable cause exists for a search does not negate the need for a neutral and detached magistrate to independently confirm probable cause and to authorize state intrusion into containers subject to Fourth Amendment protection. Otherwise, the protective language of the Fourth Amendment and of Article One, Section Eleven of the Constitution of Indiana would be meaningless.

Under the facts and circumstances of this case, the State's assertion of apparent or actual authority for Koczur and Margaret's consent to search the unmarked videotapes must fail, and the trial court's decision to admit the videotapes that had not previously been viewed by Koczur must be reversed.

**Conclusion**

Without first obtaining a warrant, the police were only permitted to view the videotapes Koczur had previously viewed.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and SULLIVAN, J., concur.

---

6. This fact is particularly dispositive. Had Koczur given the officers reason to believe the videotapes were subject to general household consumption, the outcome of this case might well be different. However, warrantless access to the contents of a container subject to Fourth Amendment protection is improper when based upon the consent of an individual who was only recently made aware of the container's existence and does not own the container and when circumstances lead to the conclusion that the container was not intended for general consumption. This is particularly true when the police have, as they had in this case, the ability to acquire consent from the container's owner or to obtain a warrant without risk of destruction of the evidence sought.