## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 18 2016, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Desmond Aaron,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 18, 2016

Court of Appeals Case No.
49A05-1511-CR-2003

Appeal from the Marion Superior Court

The Honorable Peggy R. Hart, Commissioner

The Honorable Shatrese M. Flowers, Judge

Trial Court Cause No.
49G20-1502-F4-5316

**Mathias, Judge.**

[1] Following a jury trial, Desmond Aaron ("Aaron") was convicted in Marion Superior Court of Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"), Level 6 felony possession of cocaine, Level 6 felony possession of a narcotic drug, Class B misdemeanor possession of marijuana, and was adjudicated a habitual offender. Aaron was ordered to serve an aggregate twenty-year sentence. Aaron appeals and argues that the State failed to present sufficient evidence to support his Level 4 felony unlawful possession of a firearm by a SVF conviction.

[2] We affirm.

## Facts and Procedural History

[3] In 2014, Milburn Austin ("Austin") made an agreement to pay Aaron for a drug debt incurred by Ladana ("Baby D"), Austin's female companion and a prostitute. Over the course of several months, Austin paid Aaron over $2,000. However, in late 2014, Austin discovered that Baby D was accruing new debt with Aaron that Austin did not agree to pay. Austin told Aaron that he refused to make any further payments. Aaron was upset with Austin's refusal to pay and began threatening Austin.

[4] Around 1:00 a.m. on January 30, 2015, one of Austin's friends, who was inside his apartment, notified him that someone was beating on the side of the apartment. Austin returned home to find that his friend had already left but heard more beating on the side of the apartment. Austin heard a voice that he recognized as Aaron's say, "I know you all in there. Let me in. . . You playing

games." Tr. pp. 162-64. Austin then peeked out of the curtain, and four shots were fired toward the apartment window. One bullet lightly struck Austin in the stomach. Austin then looked out of his upstairs window and saw Aaron returning to his car with what looked like a gun. Later that same morning, Aaron sent Austin several text messages, which stated: "Give me a call old man," "I'm glad you think it's a game," and "U got 2 days to get me my change sir." Tr. p. 175; State's Ex. Vol., Ex. 11-13.

[5] Ten days later, on February 9, 2015, Austin reported the shooting to the police. Austin claimed that he did not report the incident because he was afraid that it would delay his scheduled hernia surgery. Austin also testified that he was waiting to calculate his next move with Aaron. Tr. pp. 210-11. After Austin reported the shooting, he was taken to the hospital for examination, and officers investigated Austin's apartment. The police discovered holes accompanied by broken glass in Austin's window, along with holes in a blanket covering the window, a hole in an interior door, and a shell on the floor. A shell casing was later found outside of Austin's apartment.

[6] Two days later, on February 11, 2015, officers obtained a warrant, searched Aaron's residence on Watson Road, and seized his cell phone. Officers explained to Aaron that his cell phone was included on the warrant. He indicated that his phone was in his pocket. An officer then reached in Aaron's pocket to collect the phone and found three baggies filled with what appeared to be drugs. A later test revealed that the bags contained .38 grams of marijuana, 2.2 grams of cocaine, and .72 grams of heroin. Tr. p. 313. The officers also

found several rounds of live ammunition, a magazine for a semi-automatic pistol, and a Ruger revolver case after searching Aaron's residence. However, no firearms were discovered.

[7] A search of Aaron's cell phone recovered two videos that cell phone examiner Detective Grant Melton ("Detective Melton") explained were created on February 9, 2015, at 8:26 p.m. and 8:49 p.m. based on the file names. The first video depicted Aaron holding what appeared to be a gun and singing a song about crime and guns. In the second video, Aaron did not appear but sang the same song and displayed what appeared to be three guns in the bathroom.

[8] Phone record expert Detective Benjamin Bierce ("Detective Bierce") also confirmed that based on Aaron's cell phone provider's records, around 1:00 a.m. on January 30, 2015, Aaron made phone calls that were not consistent with him being at his home on Watson Road, but close to Austin's apartment. In addition, Aaron received several phone calls around 8:00 p.m. on February 9, 2015, that were routed through a tower consistent with Aaron being at Austin's home.

[9] On February 13, 2015, the State charged Aaron with Level 4 felony unlawful possession of a firearm by a SVF, Level 5 felony battery by means of a deadly weapon, Level 5 felony criminal recklessness, Level 6 felony possession of cocaine, Level 6 felony possession of a narcotic drug, Class A misdemeanor

possession of marijuana[1], and alleged Aaron to be a habitual offender. A jury trial was held on October 13-14, 2015. Aaron was convicted of Level 4 felony unlawful possession of a firearm by a SVF, Level 6 felony possession of cocaine, Level 6 felony possession of a narcotic drug, Class B misdemeanor possession of marijuana, and was adjudicated a habitual offender. At the October 30, 2015 sentencing hearing, the trial court ordered Aaron to serve an aggregate twenty-year sentence. Aaron now appeals his Level 4 felony unlawful possession of a firearm by a SVF conviction.

## Discussion and Decision

[10] Aaron argues that his conviction was not supported by sufficient evidence. "Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of witnesses, and respects the jury's exclusive province to weigh conflicting evidence. *Montgomery v. State*, 878 N.E.2d 262, 265 (Ind. Ct. App. 2007) (quoting *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)). We consider only probative evidence and reasonable inferences supporting the verdict. *Id.* We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

---

[1] The State enhanced this charge to Class A misdemeanor because Aaron had a previous conviction for possession of marijuana, but Aaron ultimately was only convicted of Class B misdemeanor.

The State was required to prove beyond a reasonable doubt that Aaron:

> [was] a serious violent felon who knowing or intentionally possesse[d] a firearm.

Ind. Code § 35-47-4-5(c). A firearm is defined by Indiana code section 35-47-1-5 as:

> any weapon: (1) that is (A) capable of expelling; or (B) designed to expel; or (2) that may readily be converted to expel; a projectile by means of an explosion.

Aaron disputes that he possessed a firearm as defined by Indiana Code section 35-47-4-5(c). He contends that no firearm was recovered when officers executed the search warrant and that the only evidence the State presented to show possession was two videos involving what appears to be firearms found on his cell phone.

At trial, Austin testified that early in the morning of January 30, 2015, Aaron came to Austin's apartment and fired several shots through the window. Austin identified Aaron by his voice that he had heard on numerous prior occasions and saw Aaron when he peaked out of the window before the shots were fired. One of the bullets grazed Austin's stomach, causing a small wound and a subsequent scar that he showed to the jury. Austin also explained that Aaron was threatening him because he owed Aaron money for a drug debt incurred by a female companion and prostitute that Austin had agreed to pay.

[14] The State also presented testimony from cellular phone records expert Detective Bierce, who indicated that based on the data obtained from Aaron's cellular service provider, Aaron's cell phone was near Austin's home during the morning of the January 30, 2015 shooting. Around 1:00 a.m., Aaron made several phone calls that were consistent with him not being at home, but in an area close to Austin's apartment.

[15] Further, after Austin reported the shooting, officers observed holes in Austin's window, holes in a blanket covering the window, a hole in an interior door, and a discharged bullet on the ground. Officers also found a shell casing outside of Austin's apartment. Police then obtained a search warrant of Aaron's residence and discovered several rounds of live ammunition, a magazine for a semi-automatic pistol, and a Ruger revolver case. Firearms Identification Forensic Scientist Michael Cooper ("Cooper") testified that the gun that Aaron was holding in the video was a revolver and consistent with a gun that uses the ammunition found at Austin's apartment.

[16] Officers also seized Aaron's cell phone pursuant to the search warrant and found a video of Aaron singing a song about guns and crime with what appears to be a revolver and another video of Aaron not pictured but singing with what appears to be several guns in the bathroom. Detective Melton testified that the videos were both created on the evening of February 9, 2015, as evidenced by the file names on the phone.

[17] The jury has the discretion to weigh the credibility of the witnesses and consider all of the evidence presented at trial. Further, a jury may rely on its collective common sense and knowledge acquired through everyday experiences when determining whether an element of a crime exists. *Halsema v. State*, 823 N.E.2d 668, 673 (Ind. 2005). Here, the jury had an opportunity to review the videos several times and draw conclusions regarding the nature of the firearms and whether Aaron possessed and/or used one or more of those displayed, based on their common sense and knowledge. This was a proper deliberative process, and we must respect the jury's discretion to believe what it chose to believe. *See McHenry*, 820 N.E.2d at 126.

[18] For all of these reasons, we conclude that the State presented sufficient evidence to support Aaron's Level 4 felony unlawful possession of a firearm by a SVF.

[19] Affirmed.

Vaidik, C.J., and Barnes, J., concur.