Juan Jose **ESPINOZA**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 09A02–0603–CR–222.

Court of Appeals of Indiana.

Dec. 27, 2006.

James T. Knight, Logansport, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

SHARPNACK, Judge.

Juan Jose Espinoza appeals his conviction for dealing in marijuana as a class C felony.[1] Espinoza raises four issues, which we revise and restate as:

I. Whether the trial court abused its discretion by admitting the cocaine and marijuana over Espinoza's chain of custody objection;

II. Whether the evidence is sufficient to sustain Espinoza's conviction for dealing in marijuana as a class C felony;

III. Whether the trial court erred by denying Espinoza's motion for a directed verdict based upon entrapment;

IV. Whether the trial court abused its discretion in sentencing Espinoza; and

V. Whether Espinoza's four-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.[2]

---

1. Ind.Code § 35–48–4–10(b)(2) (2004).

2. We remind Espinoza's counsel that the statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony." Ind. Appellate Rule

46(A)(6)(c). Additionally, Espinoza included a copy of the presentence investigation report on white paper in his appendix. See Appellant's Appendix at 26–33. We remind Espinoza that Ind. Appellate Rule 9(J) requires

The relevant facts follow. On January 20, 2005, Detective Larry Mote of the Indiana State Police received information from the DEA in the State of Washington regarding a package that was to be delivered in Logansport, Indiana ("Package"). A DEA agent in Yakima, Washington, placed the Package in another box and shipped the box by FedEx to Detective Mote at the Logansport Police Department. Detective Mote opened the box and found documentation from the Washington DEA and the Package addressed to "Jose L Solis" at "711 W Market St, Logansport, IN" from Florentina Solis. State's Exhibit 6; Transcript at 35. The Package was to be delivered by UPS on January 21, 2005, and the label described the goods being shipped as a shredder. State's Exhibit 6. Inside the Package, Detective Mote found a paper shredder box that contained seven "bricks" of marijuana and a bag of cocaine. Transcript at 47.

Detective Mote performed field tests that identified the substances as marijuana and cocaine and photographed the contents of the Package. A technician installed a transmitter in the Package that would alert the police when the Package was opened, and Detective Mote placed the marijuana and cocaine back into the Package and resealed it.

Detective Mote arranged for Officer Zeider to deliver the Package while dressed in a brown UPS uniform. Officer Zeider's uniform was equipped with a hidden camera. Officer Zeider delivered the Package to 711 W. Market Street in Logansport. Espinoza answered the door, and Officer Zeider said that he had a package for Jose. Espinoza said that Jose was not there, and Officer Zeider asked if Espinoza would sign for the package. Espinoza indicated that he would sign for the package "[f]or Jose." Transcript at 186. Espinoza signed for the Package using a false name. After Espinoza signed for the Package, Officer Zeider then asked if Espinoza wanted the Package inside the house, and Espinoza responded that he did. Officer Zeider left the package inside the doorway and left the residence.

Officer Zeider then walked to a neighboring McDonald's restaurant. A couple of minutes later, Espinoza left the house and also walked to the McDonald's restaurant. Espinoza ordered a sandwich and watched as Officer Zeider left the building. Officer Zeider got into Sergeant Klepinger's vehicle and left. Espinoza stood at a Mc-

---

that "[d]ocuments and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Ind. Administrative Rule 9(G)(1)(b)(viii) states that "[a]ll pre-sentence reports pursuant to Ind.Code § 35–38–1–13" are "excluded from public access" and "confidential." The inclusion of the presentence investigation report printed on white paper in his appellant's appendix is inconsistent with Trial Rule 5(G), which states, in pertinent part:

> Every document filed in a case shall separately identify information excluded from public access pursuant to Admin. R. 9(G)(1) as follows:
> (1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked "Not for Public Access" or "Confidential."
> (2) When only a portion of a document contains information excluded from public access pursuant to Administrative Rule 9(G)(1), said information shall be omitted [or redacted] from the filed document and set forth on a separate accompanying document on light green paper conspicuously marked "Not For Public Access" or "Confidential" and clearly designating [or identifying] the caption and number of the case and the document and location within the document to which the redacted material pertains.

Donald's window looking toward his house for a couple of minutes and then returned to his residence.

A couple of minutes after Espinoza returned to his residence, the transmitter in the Package gave a signal to the officers that the Package had been opened or tampered with. At this point, the officers entered the residence and arrested Espinoza. The Package was unopened but dented.[3] After being advised of his *Miranda* rights in English and Spanish, Espinoza said that he was unaware of the marijuana in the package. However, at that point, the officers had not opened the Package and had not mentioned that marijuana was in the Package.

The State charged Espinoza with dealing in cocaine as a class A felony[4] and dealing in marijuana as a class C felony. At Espinoza's jury trial, during the examination of Kristi Long, a chemist for the Indiana State Police, Espinoza repeatedly objected to Long's testimony and to admission of the marijuana (State's Exhibit 1), the cocaine (State's Exhibit 2), and Long's lab report (State's Exhibit 3) based upon "foundation" and "chain of custody." Transcript at 18, 21–24. The trial court noted a "continuing objection." *Id.* at 23. The lab report contained the weights of the marijuana and cocaine, but Long did not testify regarding the accuracy of the measuring devices used to weigh the marijuana or cocaine. Espinoza did not cross examine Long. During the examination of Detective Mote, the State moved to admit the lab report, and Espinoza again objected to the admission of the lab report based upon his "continuing objections" of "relevance,"

"chain of custody," "hearsay," and "what the document purports to show." *Id.* at 93. The trial court admitted the document over Espinoza's objection.

After the State rested, Espinoza moved for a directed verdict based in part upon the State's failure to prove that the scale used to weigh the substances was tested before and after its use. Espinoza's counsel stated, "I think the Court will also recall I've got a continuing objection to that evidence and as well had an objection with regard to the certificate of analysis with regard to its accuracy and I [cite] *Wattley* for that. . . ." *Id.* at 202. Espinoza also requested a directed verdict based upon the defense of entrapment. The trial court denied Espinoza's motion for a directed verdict.

The jury found Espinoza guilty of dealing in marijuana as a class C felony but not guilty of dealing in cocaine as a class A felony. At sentencing, the trial court sentenced Espinoza to the presumptive sentence of four years in the Indiana Department of Correction.

## I.

 The first issue is whether the trial court abused its discretion by admitting the cocaine and marijuana over Espinoza's chain of custody objection. We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State,* 730 N.E.2d 672, 676 (Ind.2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State,* 678 N.E.2d 386, 390

---

3. The State indicates in its Statement of Facts that "Defendant opened the package and set of [sic] a remote alarm that had been installed by the police." Appellant's Brief at 2. However, the record indicates that the Package was unopened when the police officers entered the residence. Transcript at 124.

4. Ind.Code § 35-48-4-1(b)(1) (2004) (subsequently amended by Pub.L. No. 151-2006, § 22 (eff. July 1, 2006)).

(Ind.1997), *reh'g denied.* According to Espinoza, the trial court abused its discretion by admitting the marijuana (State's Exhibit 1) and cocaine (State's Exhibit 2) because the State failed to present an adequate chain of custody for the items.

An adequate foundation establishing a continuous chain of custody is established if the State accounts for the evidence at each stage from its acquisition, to its testing, and to its introduction at trial. *Wrinkles v. State,* 690 N.E.2d 1156, 1161 (Ind.1997), *reh'g denied, cert. denied,* 525 U.S. 861, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998). "Under the chain of custody doctrine, an adequate foundation is laid when the continuous whereabouts of an exhibit is shown from the time it came into the possession of the police." *Cockrell v. State,* 743 N.E.2d 799, 808 (Ind.Ct.App. 2001).

To establish a proper chain of custody, the State must give reasonable assurances that the evidence remained in an undisturbed condition. *Troxell v. State,* 778 N.E.2d 811, 814 (Ind.2002). However, the State need not establish a perfect chain of custody, and once the State "strongly suggests" the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to admissibility. *Id.* Moreover, there is a presumption of regularity in the handling of evidence by officers, and there is a presumption that officers exercise due care in handling their duties. *Id.* To mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with. *Id.*

Espinoza appears to argue that the State failed to establish an adequate chain of custody because the State did not present evidence showing the continuous whereabouts of the drugs from the time the drugs came into the custody of law enforcement in the State of Washington until Detective Mote received the Package. Espinoza argues that the State should have presented evidence from a law enforcement officer regarding how the cocaine and marijuana first came into the custody of law enforcement. Espinoza makes no argument concerning the chain of custody of the drugs from the time Detective Mote received them until the time of their admission at trial.

Detective Mote testified that he received information from the DEA in the State of Washington regarding a package that was to be delivered in Logansport, Indiana. The DEA agent asked if Detective Mote "would be interested in conducting this investigation or did they just want to end it out there." Transcript at 43. Detective Mote responded that he wanted to conduct an investigation "on this end." *Id.* The DEA agent in Yakima, Washington, placed the Package in another box and shipped the box by FedEx to Detective Mote at the Logansport Police Department. Detective Mote opened the box and found documentation from the DEA office and a Package addressed to "Jose L Solis" at "711 W Market St, Logansport, IN" from Florentina Solis. State's Exhibit 6; Transcript at 35, 45. The Package was to be delivered by UPS on January 21, 2005, and the label described the goods being shipped as a shredder. State's Exhibit 6. Inside the Package, Detective Mote found a paper shredder box that contained seven "bricks" of marijuana and a bag of cocaine. Transcript at 47.

Although no evidence was presented regarding how the Package came into the possession of the DEA in Washington, we presume that the officers in Washington exercised due care in handling their duties. *Troxell,* 778 N.E.2d at 814. As noted

above, to mount a successful challenge to the chain of custody, Espinoza was required to present evidence that does more than raise a mere possibility that the evidence may have been tampered with. *Id.* The gap in the chain of custody goes to the weight of the evidence and not to admissibility. *Id.* The trial court did not abuse its discretion by admitting the marijuana and cocaine. *See, e.g., id.* at 815 (holding that, because of the presumption of regularity in handling evidence, the trial court did not err by admitting evidence despite gaps in the chain of custody).

## II.

■■■■ The next issue is whether the evidence is sufficient to sustain Espinoza's conviction for dealing in marijuana as a class C felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

■■■ The offense of dealing in marijuana as a class C felony is governed by Ind.Code § 35–48–4–10, which provides: "(a) A person who: ... (2) possesses, with intent to: ... (C) deliver ... marijuana ... commits dealing in marijuana ... a Class A misdemeanor." However, the offense is a class C felony if "the amount involved is ten (10) pounds or more of marijuana." I.C. § 35–48–4–10(b)(2). The Indiana Supreme Court has held that "[a]s with any other essential element, [the weight of the drug] must be proven by the State beyond a reasonable doubt." *Halsema v. State,* 823 N.E.2d 668, 673 (Ind.

2005). "In order to prove the element of weight of drugs or controlled substances, the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of the drugs or controlled substances is so large as to permit a reasonable inference that the element of weight has been established." *Id.* at 674.

According to Espinoza, the evidence is insufficient to demonstrate that the marijuana was more than ten pounds because the trial court abused its discretion by admitting testimony and evidence regarding the weight of the marijuana over Espinoza's foundation objection. We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin,* 730 N.E.2d at 676. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner,* 678 N.E.2d at 390.

■■■ Espinoza relies upon *Robinson v. State,* 634 N.E.2d 1367, 1374 (Ind.Ct.App. 1994), and *Wattley v. State,* 721 N.E.2d 353, 355–356 (Ind.Ct.App.1999), which held that "[w]hen a defendant is charged with a drug offense that is determined by the weight of the substance involved, the State must prove that the scale used to weigh the substance was tested before and after its use." *Wattley,* 721 N.E.2d at 355–356 (citing *Robinson,* 634 N.E.2d at 1374). The burden of producing evidence to disprove the accuracy of the scale then shifts to the defendant. *Id.*

■■■ Here, during the examination of Kristi Long, a chemist for the Indiana State Police, Espinoza repeatedly objected to Long's testimony and to admission of the marijuana (State's Exhibit 1), the cocaine (State's Exhibit 2), and Long's lab report (State's Exhibit 3) based upon "foundation" and "chain of custody." Transcript at 18, 21–24. The trial court noted a "continuing objection." *Id.* at 23.

The lab report contained the weights of the marijuana and cocaine, but Long did not testify regarding the accuracy of the measuring devices used to weigh the marijuana or cocaine. Espinoza did not cross examine Long. During the examination of Detective Mote, the State moved to admit the lab report, and Espinoza again objected to the admission of the lab report based upon his "continuing objections" of "relevance," "chain of custody," "hearsay," and "what the document purports to show." *Id.* at 93. The trial court admitted the document over Espinoza's objection. After the State rested, Espinoza moved for a directed verdict based in part upon the State's failure to prove that the scale used to weigh the substances was tested before and after its use. Espinoza's counsel stated, "I think the Court will also recall I've got a continuing objection to that evidence and as well had an objection with regard to the certificate of analysis with regard to its accuracy and I [cite] *Wattley* for that...." *Id.* at 202. The trial court denied Espinoza's motion for a directed verdict.

 Under Ind. Evidence Rule 103(a), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...." Grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal. *Grace v. State*, 731 N.E.2d 442, 444 (Ind.2000), *reh'g denied.* The objection must be "sufficiently specific to alert the trial judge fully of the legal issue." *Tapia v. State*, 753 N.E.2d 581, 588 n. 13 (Ind.2001). "[T]he complaining party may not object in general terms but must state the objection with specificity." *Marlatt v.*

*State*, 715 N.E.2d 1001, 1002 (Ind.Ct.App. 1999).

Although Espinoza initially objected based upon foundation, and the trial court recognized a continuing objection, Espinoza did not mention the accuracy of the scales until his motion for directed verdict. Although Espinoza argues that "it was clear to the Trial Court that Defendant was challenging testimony relating to the weight of the drugs involved, and as well the foundation for the measurement of that weight," we must disagree. Appellant's Brief at 17. From our review of the record, we conclude that Espinoza's objection was not sufficiently specific to alert the trial court to his objection regarding the accuracy of the scales. Moreover, we note that, when the lab report containing the weights of the marijuana and cocaine was admitted during Detective Mote's testimony, Espinoza did not mention a foundation objection.

In *Guadian v. State*, 743 N.E.2d 1251, 1253 (Ind.Ct.App.2001), *reh'g denied, trans. denied*, the defendant argued on appeal that the evidence was insufficient to sustain his drug conviction because the State failed to prove the accuracy of the scales used to weigh the drug. We noted that the defendant had failed to object to the admission of the drug's weight. 743 N.E.2d at 1254. We concluded that "[i]t is the responsibility of the party opposing admission of relevant evidence to show why it should be excluded." *Id.* (citing *Mullins v. State*, 646 N.E.2d 40, 48 (Ind. 1995)). Analogizing the situation to the admission of breath-test results, we noted that the Indiana Supreme Court had directed: "[W]ith respect to the foundation required for admission of breath-test results, before the prosecution has any responsibility to establish the foundation, the defense must object that the prosecution has not laid the proper foundation." *Id.*

(quoting *Mullins,* 646 N.E.2d at 48). The Indiana Supreme Court had reasoned:

> [A] defendant may not sit idly by while error is committed and later take advantage of it, where a proper objection made at trial could have corrected the error. ... Had objection been made to the lack of a proper foundation in this case, such foundation could then have been supplied.

*Id.* (quoting *Mullins,* 646 N.E.2d at 48). Based upon *Mullins,* we concluded that:

> We must carefully follow this same evidentiary burden-shifting pattern, lest we confuse foundational evidence, that is, the scale's accuracy, with substantive evidence of the cocaine's weight itself. In other words, the scale's accuracy is foundational evidence; it is not an element of the crime. Guadian failed to object to the lack of foundation. Therefore, he may not sit idly by at trial and then take advantage of his silence on appeal. Without a proper objection, the trial court committed no error in admitting evidence that the cocaine weighed 3.512 grams.

*Id.* at 1254–1255 (internal citations and footnote omitted).

 Similarly, here, Espinoza failed to timely draw the trial court's attention to his objection to the accuracy of the scales and cannot take advantage of this failure on appeal. The trial court did not err by admitting the lab report and testimony regarding the weight of the marijuana and cocaine. Consequently, the jury had evidence of probative value from which it could find that Espinoza possessed more than ten pounds of marijuana. *See, e.g., id.* (holding that the evidence was sufficient to sustain the defendant's conviction for knowingly or intentionally delivering cocaine in an amount of three grams or more).

## III.

 The next issue is whether the trial court erred by denying Espinoza's motion for a directed verdict based upon entrapment. When a defendant moves for a directed verdict, also known as a motion for judgment on the evidence, the court is required to withdraw the issues from the jury if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant. *Farris v. State,* 753 N.E.2d 641, 647 (Ind. 2001); Ind. Trial Rule 50.

 Ind.Code § 35–41–3–9 governs the defense of entrapment and provides:

> (a) It is a defense that:
> (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
> (2) the person was not predisposed to commit the offense.
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

In Indiana, the defense of entrapment turns upon the defendant's state of mind, or "whether the 'criminal intent originated with the defendant.'" *Scott v. State,* 772 N.E.2d 473, 475 (Ind.Ct.App.2002) (quoting *Kats v. State,* 559 N.E.2d 348, 353 (Ind.Ct.App.1990), trans. *denied),* trans. *denied.* "In other words, the question is whether 'criminal intent [was] deliberately implanted in the mind of an innocent person[.]'" *Id.* (quoting *United States v. Killough,* 607 F.Supp. 1009, 1011 (E.D.Ark.1985)). "It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *Id.* (quoting

*United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)).

The State may rebut this defense either by disproving police inducement or by proving the defendant's predisposition to commit the crime. *Riley v. State,* 711 N.E.2d 489, 494 (Ind.1999). If a defendant indicates that he intends to rely on the defense of entrapment and establishes police inducement, the burden shifts to the State to demonstrate the defendant's predisposition to commit the crime. *Ferge v. State,* 764 N.E.2d 268, 271 (Ind. Ct.App.2002). "Whether a defendant was predisposed to commit the crime charged is a question for the trier of fact." *Id.* The State must prove the defendant's predisposition beyond a reasonable doubt. *Id.* "If the defendant shows police inducement and the State fails to show predisposition on the part of the defendant to commit the crime charged, entrapment is established as a matter of law." *Id.*

Here, Espinoza argues that "but for the Deputy's participating in presenting the package to the Defendant and asking him to sign for it, Defendant would not have been in possession of the package." Appellant's Brief at 23. However, the police intercepted a Package that was to be delivered by UPS to "Jose L Solis" at Espinoza's address. The police then delivered the Package themselves. The Package containing the marijuana and cocaine would have been delivered to Espinoza regardless of the police actions. The police did not induce Espinoza to receive the Package, and no government deception "implant[ed] the criminal design" in Espinoza's mind. The officers' conduct merely afforded Espinoza an opportunity to commit the offense and does not constitute entrapment. I.C. § 35–41–3–9(b). We cannot say that the evidence presented regarding the entrapment defense is without conflict and subject to only one inference that is favorable to Espinoza. Thus, the trial court did not err by denying Espinoza's motion for directed verdict. *See, e.g., Garcia v. State,* 517 N.E.2d 402, 404 (Ind.1988) (holding that the defendant's entrapment defense failed where no entrapment was involved as to the cocaine shipments which were the basis for the charges; the police were involved only when the shipment's buyer agreed to aid police in persuading the defendant to come to Indianapolis to collect payment for the shipments).

## IV.

The next issue is whether the trial court abused its discretion in sentencing Espinoza.[5] Sentencing decisions rest within the discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Smallwood v. State,* 773 N.E.2d 259, 263 (Ind.2002). An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Pierce v. State,* 705 N.E.2d 173, 175 (Ind.1998).

The trial court here imposed the presumptive sentence and did not identify any specific aggravators or mitigators. A trial court that imposes "the presumptive sentence is under no obligation to explain [its] reasons through the delineation of the aggravating and mitigating cir-

---

**5.** Indiana's sentencing scheme was amended effective April 25, 2005, to incorporate advisory sentences rather than presumptive sentences. *See* Ind.Code §§ 35–38–1–7.1, 35–50–2–1.3. Espinoza committed his offenses prior to the effective date and was sentenced on February 14, 2006. Neither party argued to the trial court or on appeal that the amended sentencing statutes should be applied. Consequently, we will apply the version of the sentencing statutes in effect at the time Espinoza committed his offense. Moreover, the application of the amended sentencing statute would not change the result here.

cumstances." *O'Neill v. State,* 719 N.E.2d 1243, 1244 (Ind.1999). Where the presumptive sentence is imposed, we "will presume the trial court considered the alternatives." *Id.*

 Espinoza argues that the trial court abused its discretion by not adopting the mitigating factors proposed by the probation department in its presentence investigation report ("PSI") and by not imposing a sentence less than the presumptive. "The finding of mitigating factors is not mandatory and rests within the discretion of the trial court." *Id.* The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor. *Gross v. State,* 769 N.E.2d 1136, 1140 (Ind.2002). "Nor is the court required to give the same weight to proffered mitigating factors as the defendant does." *Id.* Further, the trial court is not obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind. 2001). However, the trial court may "not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State,* 711 N.E.2d 835, 838 (Ind. 1999).

The PSI identified three proposed mitigators: (1) Espinoza's lack of a criminal history; (2) Espinoza's support of his children; and (3) Espinoza's employment at the time of his arrest. We first address Espinoza's lack of a criminal history. The PSI indicates that Espinoza has only traffic infractions, and Espinoza argues that this lack of a criminal history should have

been a significant mitigator. The Indiana Supreme Court has held that a criminal history consisting of no prior felony convictions, one prior misdemeanor marijuana possession conviction and several traffic infractions, most of which had been dismissed, was "not a criminal history that supports a significant aggravating factor" or a factor amounting to "significant mitigating weight." *Robinson v.* State, 775 N.E.2d 316, 321 (Ind.2002); *see also Bunch v. State,* 697 N.E.2d 1255, 1258 (Ind.1998) (trial court considered defendant's lack of prior criminal history, but properly declined to accord it significant weight), *reh'g denied.* Similarly, here, Espinoza's lack of a criminal history is not entitled to significant mitigating weight.

As for Espinoza's support of his children, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State,* 720 N.E.2d 1146, 1154 (Ind. 1999). The Indiana Supreme Court has noted this mitigator can properly be assigned no weight when the defendant fails to show why incarceration for a particular term will cause more hardship than incarceration for a shorter term. *Abel v. State,* 773 N.E.2d 276, 280 (Ind.2002). Espinoza offered no such testimony, and we cannot say the trial court abused its discretion in declining to assign weight to this mitigator.

Lastly, as for Espinoza's employment, the PSI indicates only that Espinoza was self employed doing construction work. Espinoza presented no additional evidence regarding his employment. Espinoza has failed to establish that the employment evidence is both significant and clearly supported by the record. Thus, the trial court did not abuse its discretion by not considering Espinoza's employment histo-

ry as a mitigating circumstance. *See, e.g., Bennett v. State,* 787 N.E.2d 938, 948 (Ind. Ct.App.2003) (holding that the trial court properly did not find that defendant's employment was a significant mitigating circumstance where defendant did not present a specific work history, performance reviews, or attendance records), trans. *denied.*

We conclude that the trial court did not abuse its discretion by declining to assign significant weight to the proposed mitigators. *See, e.g., O'Neill,* 719 N.E.2d at 1244 (holding that the trial court did not abuse its discretion by sentencing the defendant to the presumptive sentence despite the defendant's proposed five mitigating factors).

## V.

 The final issue is whether Espinoza's four-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The trial court imposed the presumptive sentence, but Espinoza requests that we impose a reduced sentence.

Our review of the nature of the offense reveals that Espinoza received a substantial amount of marijuana by way of a UPS package shipped from the State of Washington. The evidence indicates that Espinoza was waiting at his residence for the drugs to be delivered. At the time the drugs arrived, Espinoza was babysitting children. Our review of the character of the offender reveals that, although thirty-eight-year-old Espinoza does not have a criminal record, he is an illegal immigrant and carries an invalid driver's license un-

der the name of Fidel Valle, Jr. After due consideration of the trial court's decision, we find nothing in the above to make Espinoza's four-year presumptive sentence for dealing in marijuana as a class C felony inappropriate. *See, e.g., Francis v. State,* 817 N.E.2d 235, 239 (Ind.2004) (holding that the presumptive sentence of 30 years for child molesting as a class A felony was the appropriate sentence in light of the nature of the offense and the character of the offender).

For the foregoing reasons, we affirm Espinoza's conviction and sentence for dealing in marijuana as a class C felony.

Affirmed.

KIRSCH, C.J. and MATHIAS, J. concur.