## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Ryan D. Bower
Salem, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jamie Lykins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 13, 2015

Court of Appeals Case No. 88A04-1408-CR-387

Appeal from the Washington Circuit Court
The Honorable Larry W. Medlock, Judge
Cause No. 88C01-1309-FA-641

**Bradford, Judge.**

# Case Summary

[1]     On September 7, 2013, Appellant-Defendant Jamie Lykins physically assaulted an eight-month-old child resulting in the child's death.  Lykins pled guilty to

battery resulting in death and neglect of a dependent resulting in death, both Class A felonies. Lykins was sentenced to fifty years for the battery conviction and forty years for the neglect convction, both to be fully executed and to run concurrently, for an aggregate term of fifty years. Lykins contends that the trial court abused its discretion by considering improper aggravating factors and failing to consider certain mitigating factors. Lykins also argues that his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

## Facts and Procedural History

Lykins lived at his father's house with his girlfriend, Casey Crain, and her eight-month-old son, L.C. On September 7, 2013, Lykins and Casey were planning to go fishing with Lykins's cousin, Gregory Lee, and Lee's girlfriend Michelle Livingston. Dawn Walker, another friend, was supposed to babysit L.C. overnight. Around 5:00 p.m., Lykins brought L.C. into the bedroom to put him down for a nap, closed the bedroom door, and turned on the radio to a high volume. Lykins then physically assaulted the child for approximately forty-five minutes until L.C. stopped crying and became unresponsive. The forensic pathologist identified signs of at least twelve separate impacts on L.C.'s head and seven impacts on the child's torso and genitals. The pathologist's official report listed twenty-nine separate injuries, twenty of which were to the head.

Around 7:00 p.m., Lee and Livingston arrived at the house. The group sat in the living room and talked about fishing while they were waiting for the

babysitter to arrive. At some point, Lykins mentioned that L.C. had rolled off the bed and hit his head. Lee and Livingston asked to see L.C. and, upon seeing him, immediately recognized that his injuries were severe and that he needed medical attention. L.C.'s head, face, and ear were purple from extensive bruising, he was struggling to breathe, and he did not appear to be conscious. Lee asked if Casey or Lykins had taken L.C. to get medical treatment and they responded that they had not as the injuries had occurred just thirty minutes earlier.

[4] Around that time, Walker, the babysitter, arrived. While Lee and Livingston were outside, Lykins said to Walker, "We have a problem. I beat the f*** out of baby [L.C.]." Tr. p. 146. Lee attempted to convince the group to take the child to the hospital. Casey and Lykins were reluctant to go to the hospital because they were worried Child Protective Services would get involved. Lee ultimately convinced them to go and drove L.C., Casey, Lykins, and Livingston to the hospital. Lykins told the emergency room personnel and police that L.C. had fallen out of bed and hit his head. L.C. died at the hospital as a result of a subdural hematoma caused by multiple blunt force traumas to the head.

[5] Lykins pled guilty to battery resulting in death and neglect of a dependent resulting in death, both Class A felonies. In the sentencing order, the trial court listed four statutory aggravating factors: (1) the harm, injury, loss, or damage suffered by the victim was significant and greater than the elements necessary to prove the commission of the offense; (2) Lykins was on bond when he committed the offense; (3) Lykins was in a position of care, custody, or control

of the victim; and (4) Lykins has a history of criminal behavior. At the sentencing hearing, the trial court also listed as an additional non-statutory aggravating factor, the fact that Lykins attempted to cover up his crime by lying to several individuals about how L.C.'s injuries occurred. The trial court found three mitigating factors: (1) Lykins had led a law-abiding life for a substantial period prior to committing the offense; (2) Lykins accepted responsibility for his actions via his guilty plea; and (3) Lykins appeared to be remorseful. Lykins was sentenced to fifty years for the battery conviction and forty years for the neglect of a dependent conviction. The sentences were imposed concurrently for an aggregate term of fifty years executed.

# Discussion and Decision

Lykins claims (1) that the trial court abused its discretion in crafting his sentence and (2) that the sentence is inappropriate in light of the nature of the offense and character of the offender.

# I. Abuse of Discretion

As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *aff'd on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. One way in which a trial court may abuse its discretion is by failing to enter a sentencing statement at all. *Id*. Another example includes entering a sentencing statement that explains reasons for imposing a sentence, including aggravating and mitigating factors, which are not supported by the record. *Id*. at 490-91.

> Because the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence, a trial court cannot now be said to have abused its discretion by failing to properly weigh such factors. *Id*. at 491.

*Sharkey v. State*, 967 N.E.2d 1074, 1078 (Ind. Ct. App. 2012).

[8]   Lykins claims that the trial court abused its discretion by considering as aggravating factors (1) that the harm, injury, loss, or damage suffered by the victim was significant and greater than the elements necessary to prove the commission of the offense, and (2) that Lykins was in a position of having care, custody, or control of the victim.

[9]   Indiana courts have held that a trial court may impose a sentence greater than the advisory sentence based on aggravating factors which are material elements of the offense so long as (1) the unique nature and circumstances of the crime justify the deviation, (*Gomilla v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014)), and (2) the trial court provides something more than a generalized reference to those circumstances. *Smith v. State*, 872 N.E.2d 169, 179 (Ind. Ct. App. 2007), *trans. denied*.

[10]   To prove that Lykins committed battery resulting in death, the State was required to show that Lykins struck the victim in a rude, insolent, or angry manner and that the victim, who was under the age of fourteen, died as a result of the blow. Ind. Code § 35-42-2-1(a)(5). As discussed above, Lykins's actions went far beyond merely striking the victim once, the minimum necessary to prove battery. Lykins struck the child at least twelve times in the head and

seven more times in the torso, back and genital areas, resulting in twenty-nine distinct, identifiable injuries. These actions do not indicate a momentary lapse in rationality and decency, rather; Lykins's assault on the child lasted forty-five minutes. That level of sustained brutality indicates a fixed intent to inflict pain and suffering and marks a much more sinister offense.

[11] The trial court highlighted the particularly egregious nature of Lykins's offense in the following statements at the sentencing hearing:

> [O]ne of your witnesses indicated that this was an accident, but I noticed [defense counsel] did not argue that on [] your behalf. This was not an accident. It was a deliberate venting of anger or rage upon a little human that could not defend himself.
>
> * * *
>
> [T]here didn't appear to be any remorse from what I could gather. There was deception, lies, and the evading of the truth. And more importantly, I think, the evading or the prevention of med– the immediate medical attention for [L.C.].
>
> * * *
>
> [A] child was lying there, trying to catch its breath, trying to live, trying to survive, and you were talking about fishing. And the images that we saw to the – the, the brutality of the beating that [L.C.] sustained is, is as your cousin would indicate, shocking. And [] I've been involved in numerous murder cases where people have done some pretty atrocious things to one another. Typically adults, typically people that at least had the opportunity to defend themselves … [or] invited bad things to happen to 'em. But this child had no opportunity to invite anything bad to happen to him.

Tr. Vol. IV pp. 30-34.

[12] Lykins claims that the trial court improperly considered the young age of the victim as an aggravating factor. However, the Indiana Supreme Court has held

that "even where the age of the victim is an element of the offense, the very young age of a child can support an enhanced sentence as a particularized circumstance of the crime." *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012).

[13] The trial court also properly found as an aggravating factor that Lykins had care, custody, or control over the victim. Lykins argues that because having care, custody, and control of a child is an element of the offense of neglect of a dependent, that the trial court erred by considering it an aggravating factor. However, "care, custody, or control" is not an element of battery resulting in death and, as such, the trial court did not err in considering it an aggravating factor as it relates to that offense. *See Gomilla*, 13 N.E.3d at 853 (the Supreme Court noted that although the sentencing court considered "fear" as an aggravating factor, an element of the charged offense of robbery, this was not inappropriate because the defendant was also charged with criminal deviate conduct, of which "fear" is not an element.)

[14] Lykins also argues that the trial court erred by failing to recognize additional mitigating factors, such as his familial responsibilities to care and provide for his two sons. "When a defendant argues mitigating circumstances to the trial court, the sentencing judge is not obligated to explain why he has chosen not to make a finding of mitigation." *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind. 1986), *reh'g denied*; *see also Espinoza v. State*, 859 N.E.2d 375, 387 (Ind. Ct. App. 2006). Lykins goes on to argue that the trial court did not properly weigh the Pre-Sentence Risk Assessment. However, arguments that the trial court did not

properly weigh the mitigating and aggravating factors is not a cognizable claim on appeal. As mentioned above, "a trial court cannot now be said to have abused its discretion by failing to properly weigh [aggravating and mitigating] factors." *Anglemyer*, 868 N.E.2d at 491.

## II. Appropriateness of Sentence

"Ind. Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender." *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. "An appellant bears the burden of showing both prongs of the inquiry favor revision of her sentence." *Id*. (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). "We must give 'deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions.'" *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013) (quoting *Trainor v. State*, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), *trans. denied*.)

In *Anderson*, we found that the appellant waived her Rule 7(B) argument because she argued on appeal "only the 'character' prong and not the 'nature of the offense' prong." 989 N.E.2d at 827. Lykins argues only that his sentence was inappropriate based on his character and has made no arguments as to the nature of the offense. As such, Lykins has waived any argument in this regard.

[17] Waiver notwithstanding, Lykins's argument still fails. In reviewing the first prong of the appropriateness inquiry, Lykins's offense was astonishingly violent and perpetrated against a defenseless, infant victim. As explained above, Lykins's actions grossly exceeded the elements of the charged offense and undoubtedly justified an enhanced sentence.

[18] As for his character, Lykins was on bond for possession of a controlled substance when he committed the instant offense. Lykins admitted to using drugs since he was eighteen years old, beginning with marijuana and ultimately progressing to more serious drugs such as methamphetamine and heroin. Lykins argues that his use of heroin caused him to kill L.C. This is no excuse. Lykins was aware of the problems drugs had caused and did not change his pattern of reckless behavior. Moreover, the fact that Lykins was using drugs while he was supposed to be caring for an eight-month-old child further indicates the nature of his character. Accordingly, we have found nothing to suggest that Lykins's sentence is inappropriate based on the nature of his offense or character.

[19] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.